UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

JERRY VANDIVER,

       Plaintiff,                    CIVIL ACTION NO. 08-CV-10508

vs.

                                      DISTRICT JUDGE MARIANNE O. BATTANI

DOUG VASBINDER, et al.,         MAGISTRATE JUDGE MONA K. MAJZOUB

       Defendants.
_____/

## REPORT AND RECOMMENDATION

**I.** **RECOMMENDATION:** This Court recommends that the motion for summary judgment filed by Defendants Beth Gardon and Connie Ives (docket no. 80) be granted and Plaintiff's complaint be dismissed.

**II.** **REPORT:**

This matter comes before the Court on the motion for summary judgment filed by Defendants Beth Gardon and Connie Ives. (Docket no. 80). Plaintiff filed a response. (Docket no. 85). Defendants filed a reply. (Docket no. 86). This action has been referred for all pretrial purposes. (Docket no. 35). The Court dispenses with oral argument on the motion pursuant to E.D. Mich. LR 7.1(f). The motion is ready for ruling pursuant to 28 U.S.C. § 636(b)(1)(B).

**A.** **Facts**

This is a civil rights action filed by a state prisoner pursuant to 42 U.S.C. § 1983. Plaintiff is presently represented by counsel. The events giving rise to this action occurred while he was incarcerated at the G. Robert Cotton Correctional Facility (JCF) in Jackson, Michigan. Defendants

1

to this motion are JCF Health Care Services Unit Manager Beth Gardon and JCF Health Care Services Nurse Supervisor Connie Ives.  Plaintiff, who is diabetic and suffers from Hepatitis C, hypertension, and peripheral vascular disease, alleges that Defendants violated his First and Eighth Amendment rights when they denied him medical treatment in retaliation for his exercising his First Amendment rights.

According to the amended complaint, more than two decades ago a Michigan Department of Corrections ("MDOC") physician issued an order requesting that Plaintiff be permanently transferred to a Jackson, Michigan correctional facility for health reasons. (Docket no. 58 at ¶ 11). Plaintiff alleges that beginning in August 2006 Defendant Ives discontinued or withheld critical medical treatment and other accommodations from Plaintiff in retaliation for his exercising his First Amendment rights. (Docket no. 58 at ¶ 14). He claims that Defendant Gardon unilaterally cancelled monthly healthcare forum meetings in November 2006 also in retaliation. (Docket no. 58 at ¶ 16-17). Plaintiff claims that Defendants refused to dispense treatment including medication, special shoes, a transport vehicle, a special diet, and other diabetes-related accommodations. (Docket no. 58 at ¶ 18). He further claims that Defendants refused to process his grievances and attempted to transfer him to a different facility despite his medical order for permanent placement at JCF. (Docket no. 58 at ¶¶ 20-21).

**B.     Standard**

Summary judgment is appropriate where the moving party shows that there is "no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a). The moving party has the burden of showing an absence of evidence to support the non-moving party's case.  *Covington v. Knox Cnty. Sch. Sys.*, 205 F.3d 912, 915 (6th Cir. 2000).

Once the moving party has met its burden of production, the non-moving party must come forward with significant probative evidence showing that a genuine issue exists for trial. *Id.* A mere scintilla of evidence is insufficient to defeat a properly supported motion for summary judgment; rather, "there must be evidence on which the jury could reasonably find for the [non-moving party]." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 252 (1986).

**C.     Analysis**

Plaintiff first contends that Defendants withheld Plaintiff's special diabetic diet trays for months forcing him to eat from the regular food line, refused to dispense his hypertension medication, refused to provide orthopedic shoes for two months, and failed to provide a transport vehicle. He claims that Defendants' failure to implement his diet and medication orders from late 2006 until approximately March of 2007 accelerated the progression of his cardiovascular and peripheral vascular disease and caused him to lose his eyesight, suffer a heart attack, and undergo multiple amputations. He claims that Defendants' actions violated his Eighth Amendment rights.

To establish a cognizable claim for a violation of the Eighth Amendment under a theory of deliberate indifference to a serious medical need, an inmate must show that he suffered from a serious medical need and the official acted with a sufficiently culpable state of mind. *Farmer v. Brennan*, 511 U.S. 825, 834 (1994). A sufficiently serious medical need is one that has been diagnosed by a physician as mandating treatment or is so obvious that even a lay person would easily recognize the necessity for a doctor's attention. *Blackmore v. Kalamazoo Cnty.*, 390 F.3d 890, 897 (6th Cir. 2004) (citations omitted). An official acts with deliberate indifference when he consciously disregards an excessive or substantial risk to inmate health or safety. *Farmer*, 511 U.S. at 837.

A defendant cannot be held vicariously liable under § 1983. *Street v. Corr. Corp. of Am.*, 102 F.3d 810, 818 (6th Cir. 1996). Instead, to prevail under § 1983 a plaintiff must show that each defendant was personally involved in, or otherwise authorized, approved, or knowingly acquiesced in the alleged unconstitutional conduct and that such acquiescence was a proximate cause of the plaintiff's harm. *Siggers v. Campbell*, 652 F.3d 681, 695 (6th Cir. 2011).

The parties submitted excerpts from Plaintiff's medical record, affidavits, and deposition testimony in support of their opposing positions. An MDOC Special Accommodation Notice dated May 9, 2006 states that Plaintiff required a 2500 calorie diabetic diet with an evening snack bag as a "permanent" accommodation. (Docket no. 85, ex. A6). In apparent response to the Special Accommodation Notice, the prison registered dietitian entered a medical progress note dated May 24, 2006 that addresses the order for a 2500 calorie diabetic diet and states that a 2500 calorie diabetic diet was not available. (Docket no. 80, ex. E). The registered dietitian recommended that Plaintiff receive a 2400 calorie diabetic diet until call out. She also recommended that Plaintiff be called out as soon as possible. A second dietary note written by a registered dietitian dated June 27, 2006 states that Plaintiff was receiving a 2400 calorie diabetic diet. The dietitian recommended that the diet be continued. (Docket no. 80, ex. H).

On December 18, 2006 Dr. Fatu wrote a diet order for a 2600 calorie mechanical soft diabetic diet, to be effective from December 18, 2006 to June 18, 2007. (Docket no. 80, ex. A). He also wrote medical detail orders for a shower chair, a wheelchair, prescription shoes, and a transport vehicle with a lift. (Docket no. 80, ex. B).

Dr. Fatu wrote a second diet order on December 29, 2006, this time for a 2200 calorie diabetic diet with a snack. (Docket no. 80, ex. C). The doctor testified that he did not recall why

4

he reduced the calorie level of the diet. However, Plaintiff testified that the calorie level was reduced because he wanted to lose weight. (Docket no. 80, ex. G; Docket no. 85, ex. C at 22:16-22). Plaintiff testified that he approached Dr. Fatu on December 29, 2006 and informed the doctor that the December 18 diet order was wrong because it was too high in calories and it was mechanical soft. (Docket no. 86, ex. A at 74:5-15). He testified that Dr. Fatu changed the diet order that day to a 2200 diabetic diet. (Docket no. 85, ex. C at 22:18-22; Docket no. 86, ex. A at 74:9-13).

A handwritten notation on the December 29, 2006 diet order states that the order was processed on January 7, 2007 by "J. Ives." (Docket no. 80, ex. C). Defendant Connie Ives testified during her deposition that this diet order was processed not by herself, but by "the other Ives," a woman by the name of Janet Ives. (Docket no. 80, ex. D at 102:13-17).

Defendant Gardon's affidavit and deposition testimony state that as the Health Unit Manager she was responsible for implementing new diet orders for inmates after the physician wrote the order or entered the order in the computer. (Docket no. 85, ex. G). She testified that her job was to ensure that the diet order was in compliance with the dietary regulations in place at the time. (Docket no. 85, ex. E at 25:12-21). If the diet complied with the rules and regulations, Defendant Gardon would approve the diet and forward it to a medical records clerk who would type up the diet detail and disseminate the information to the dietitian, kitchen, and other areas as needed. (Docket no. 85, ex. E at 25:22-26:3). If she was not available to implement the order, Defendant Ives would assume the responsibility. (Docket no. 85, ex. E at 26:4-7).

Plaintiff testified that a chow line worker told him in November 2006 that he was no longer on a special diet. He claims that from November 2006 to January 2007 Defendant Gardon and Ives "held up" his diet and he was "forced to eat from the regular food menu." (Docket no. 85, ex. A,

5

C). In direct contradiction to this allegation, Plaintiff also testified that he received his diet tray between December 18 and December 29, 2006. (Docket no. 86, ex. A at 74:16-75:7).

The record shows that Defendants Gardon and Ives implemented "new" diet orders after the physician wrote the order or entered the order in the computer. Once Defendants ensured that the diet order complied with applicable dietary regulations they forwarded it to a medical records clerk who would ultimately disburse it to others within the facility. There is no evidence to show that Defendants Gardon and Ives had the ability to interfere with a diet order after they sent it to the medical records clerk, or after it was disbursed to the kitchen, dietitian, and others. The record shows that Plaintiff was receiving a 2400 calorie diabetic diet on or around June 27, 2006. The next order on record is the December 18, 2006 order for a 2600 calorie diabetic mechanical soft diet. Plaintiff testified that he received this diet from December 18, 2006 through December 29, 2006. The evidence then shows that the December 29, 2006 diet order was processed by non-party Janet Ives. Plaintiff has failed to show that there are triable issues of fact concerning whether Defendants violated his Eighth Amendment rights by withholding his special diet. Furthermore, Plaintiff has not brought forward sufficient evidence to show that Defendants Gardon or Ives refused to dispense his hypertension medication, or refused to provide him with his other diabetes-related accommodations such as orthopedic shoes.

Plaintiff has failed to demonstrate that Defendants were personally involved in a constitutional wrongdoing. The Court should find that no genuine issues of material facts exist on Plaintiff's Eighth Amendment claim against Defendants Gardon and Ives.

Next, Plaintiff argues that Defendants Gardon and Ives retaliated against him for exercising his First Amendment rights by withholding his diabetic diet from a period of several months, by

refusing to dispense his hypertension medication from December 2006 through March 2007, by refusing to issue his orthopedic shoes until February 2007, by transferring him from one facility to another when he was under a doctor's order to remain permanently housed at JCF, and by refusing to process his grievances. He also claims that Defendant Gardon unilaterally cancelled monthly healthcare forum meetings in November 2006 in retaliation.

A claim of retaliation under the First Amendment requires proof that the prisoner engaged in protected conduct, an adverse action was taken against him that would deter a person of ordinary firmness from continuing to engage in that conduct, and the adverse action was motivated at least in part by the prisoner's protected conduct. *Thaddeus-X v. Blatter,* 175 F.3d 378, 394 (6th Cir. 1999) (citations omitted). Once the plaintiff establishes a violation, the defendant "can avoid liability by showing that [he] would have taken the same action even in the absence of the protected conduct." *Gaspers v. Ohio Dep't of Youth Servs.*, 648 F.3d 400, 412 (6th Cir. 2011) (citation and internal quotation marks omitted). Prisoners have a constitutionally protected right to adequate medical care, but no similar right to remain at a specific facility or prevent a transfer to another facility for a permissible reason. *See Farmer v. Brennan*, 511 U.S. 825 (1994); *Ward v. Dyke*, 58 F.3d 271, 274 (6th Cir. 1995).

Here as before, Plaintiff has not provided sufficient evidence to demonstrate that Defendants Gardon or Ives interfered with or refused to dispense treatment and accommodations including medication, special shoes, a transport vehicle, a special diet, and other diabetes-related accommodations. (Docket no. 58 at ¶ 18). He also has not shown that Defendants were personally involved in the decision to transfer Plaintiff to a different prison facility. As for Plaintiff's claim that Defendant Gardon unilaterally cancelled monthly healthcare forum meetings in retaliation, the

record shows that one healthcare meeting was cancelled. (Docket no. 58, ex. B). That meeting had originally been scheduled for the third week of November 2006, very close to the Thanksgiving holiday. Plaintiff has not persuaded the Court that cancelling one healthcare forum meeting constitutes an adverse action that would deter a person of ordinary firmness from continuing to engage in protected First Amendment activities. Nor has Plaintiff provided sufficient evidence to show that Defendant Gardon cancelled the November meeting in whole or in part to retaliate against Plaintiff for engaging in protected activities.

Finally, as for Plaintiff's claims that Defendants refused to process his grievances, the record contains grievance responses and shows that Plaintiff was familiar with and made use of the MDOC policy that permits a prisoner to continue his grievance to the next step if he fails to receive a timely response to his grievance. It is the undersigned's opinion that Plaintiff has failed to show that genuine issues of fact exist on his First Amendment claim.

Plaintiff's claims that Defendants Gardon and Ives retaliated against him and were deliberately indifferent to his medical needs are without merit. Accordingly, Defendants are entitled to summary judgment. Since Defendants Gardon and Ives are the last remaining Defendants in this action, Plaintiff's complaint should be dismissed.

### III.     NOTICE TO PARTIES REGARDING OBJECTIONS:

The parties to this action may object to and seek review of this Report and Recommendation, but are required to act within fourteen (14) days of service of a copy hereof as provided for in 28 U.S.C. § 636(b)(1) and E.D. Mich. LR 72.1(d)(2). Failure to file specific objections constitutes a waiver of any further right of appeal. *Thomas v. Arn*, 474 U.S. 140 (1985); *Howard v. Sec'y of Health & Human Servs.,* 932 F.2d 505 (6th Cir.1991); *United States v. Walters*, 638 F.2d 947 (6th

Cir.1981). Filing of objections which raise some issues but fail to raise others with specificity, will not preserve all the objections a party might have to this Report and Recommendation. *Willis v. Sec'y of Health & Human Servs.*, 931 F.2d 390, 401 (6th Cir.1991); *Smith v. Detroit Fed'n of Teachers Local 231*, 829 F.2d 1370, 1373 (6th Cir.1987). Pursuant to E.D. Mich. LR 72.1(d)(2), a copy of any objections is to be served upon this Magistrate Judge.

Any objections must be labeled as "Objection #1," "Objection #2," etc. Any objection must recite *precisely* the provision of this Report and Recommendation to which it pertains. Not later than fourteen days after service of an objection, the opposing party must file a concise response proportionate to the objections in length and complexity. The response must specifically address each issue raised in the objections, in the same order and labeled as "Response to Objection #1," "Response to Objection #2," etc.

Dated: January 11, 2013       s/ Mona K. Majzoub
                              MONA K. MAJZOUB
                              UNITED STATES MAGISTRATE JUDGE

## PROOF OF SERVICE

I hereby certify that a copy of this Report and Recommendation was served upon Counsel of Record on this date.

Dated: January 11, 2013       s/ Lisa C. Bartlett
                              Case Manager