UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

JERRY VANDIVER,

        Plaintiff,                     CASE NO. 08-10508

v.                                       HON. MARIANNE O. BATTANI

DOUG VASBINDER, et al.,

        Defendants.

_____/

**OPINION AND ORDER REJECTING REPORT AND RECOMMENDATION
AND DENYING DEFENDANTS' MOTION FOR SUMMARY JUDGMENT**

Plaintiff Jerry Vandiver filed a civil rights action pursuant to 42 U.S.C. § 1983 based upon conduct that occurred during his incarceration at Robert Cotton Correctional Facility ("JCF") in Jackson, Michigan. According to Vandiver, Defendants violated his Eighth Amendment rights when they delayed or denied his medical treatment and did so in retaliation for his exercise of protected First Amendment rights. (Doc. No. 58 at ¶ 3). The case was referred to Magistrate Judge Mona K. Majzoub for all pretrial proceedings. See 28 U.S.C. § 636(b)(1).

Defendants Beth Gardon and Connie Ives subsequently filed a motion for Summary Judgment and Qualified Immunity (Doc. No. 80). Gardon is the JCF Health Care Services Unit Manager; Ives is the JCF Health Care Services Nurse Supervisor. (Doc. No. 88, R&R at 2). Defendants contend that Plaintiff failed to establish any personal involvement in the challenged constitutional violations; that Plaintiff failed to exhaust his administrative remedies relative to retaliatory transfer; and that they are

entitled to qualified immunity. Consequently, they ask the Court to award them summary judgment.

In her Report and Recommendation, the Magistrate Judge recommended that the Court dismiss Defendants Beth Gardon and Connie Ives pursuant to Fed. R. Civ. P. 56(a). (Doc. No. 88). Plaintiff timely filed an objection. For the reasons that follow, the Court **GRANTS** the objection, **REJECTS** the Report and Recommendation, and **DENIES** Defendants' motion.

## I. BACKGROUND

Vandiver is diabetic and suffers from Hepatitis C, hypertension, and peripheral vascular disease. (Doc. No. 58 at ¶ 10). In his amended complaint, Vandiver alleges that Defendants withheld medical treatments, including medication, special shoes, a transport vehicle, and a special diet to treat his diabetes-related symptoms. (Doc. No. 58 at ¶ 22).

In May 2006, Vandiver was transferred to JCF. Gardon, a registered nurse, was the Housing Unit Manager; Ives, a registered nurse, was the nursing coordinator. (Doc. No. 85, Ex. A. When Vandiver arrived at JCF, the health care staff conducted a transfer assessment/screening. (Doc. No. 85, Ex. A at ¶ 9, and Ex. 5 thereto). The completed form indicates that Vandiver needed a diet. Id. On May 9, 2006, an accommodation order issued. (Doc. No. 85, Ex. A at ¶ 10, and Ex. 6 thereto). Several accommodations were ordered including a barrier free, wheelchair accessible cell on the ground floor with a shower chair, a special diabetic diet and an evening snack bag; and prescription shoes. (Id.)

Beginning as early as August 26, 2006, Vandiver began complaining about his substandard medical care though the grievance procedure.  Vandiver now asserts that in August 2006, Ives discontinued or withheld critical medical treatment and other accommodations from Plaintiff in retaliation for his exercise of First Amendment Rights.  Plaintiff alleges that Gardon unilaterally cancelled the monthly healthcare forum meeting in November 2006 in retaliation.  (Id. at ¶¶16-17).  Vandiver, an active participant in the meetings raised the cancellation to the warden of the facility, and asked that Gardon be compelled to reschedule the meeting.  (Id. at 17).

On December 18, 2006, Plaintiff's treating physician, Dr. Fatu ordered special shoes, a transport vehicle, and a special diet.  (Doc. No. 58 at ¶ 18).  The doctor altered the diet order on December 29, 2006.  Nevertheless, Vandiver alleges that he did not receive his special diet, and that he did not receive prescribed orthopedic shoes until February 22, 2007.  Vandiver attributes these delays to retaliation for his complaints to the warden.

On January 9, 2007, Vandiver again filed a grievance alleging that he had not received medical care in retaliation for his protected activity.  According to Plaintiff, thereafter, on January 26, 2007, Gardon and Ives attempted to transfer him to another facility despite his medical order for permanent placement at Jackson. (Doc. No. 58 at ¶ 21).

Plaintiff wrote a letter to the Warden on January 28, 2007, about the "attempted retaliatory transfer and to request fulfillment of his physician's orders." (Doc. No. 58 at ¶ 22).  Vandiver subsequently sought relief through the Michigan Department of Corrections' (MDOC) administrative grievance process.  In his Step I Grievance,

Vandiver claims he submitted "about nine health care kites since January 3, 2007," but received no response.  (Doc. No. 58, ex. B).  Vandiver states that the kites requested medication renewals, a diabetic diet, and special accommodations as order by his doctor.  Plaintiff asserted that he was being denied health care because of issues he raised at the warden's forum.  (Id.)

When Vandiver did not receive a response to his grievance, he filed a Step II appeal.  In his February 11, 2007, appeal, he asserts that Gardon and Ives denied him medical care, refused to update his special accommodation notice, and refused to comply with the treatment plan because of his participation in the health care forum and because of prior lawsuits.  He further reported that there was an attempt to transfer him because of these activities.  (Doc. No. 85, Ex. A, at Ex. 16).  Vandiver then developed an infection in his foot, for which he was treated.  (Doc. No. 85, Ex. A at ¶ 25).  After Plaintiff was cleared by the health care staff on February 13, 2007, he was transferred to another facility.  The transfer screening did not list his need for a diabetic diet.  (Doc. No. 85, Ex. A at Att. 16).

On May 5, 2007, Vandiver filed a Step III appeal because the MDOC had not yet responded to his grievance.  MDOC issued a Step I response a month later, on June 6, 2007.  (Doc. No. 85, Ex. A and Ex 12 thereto).  On July 18, 2007, MDOC responded to the Step III grievance.

In their motion for summary judgment, Defendants assert that Plaintiff's Eighth Amendment claim fails because he cannot show their involvement in the medical issues identified by Plaintiff.  They also assert that Plaintiff's First Amendment retaliation claim fails because they did not take an adverse action.  In addition, they argue that Plaintiff

did not exhaust his administrative remedies relative to retaliatory transfer.  Finally, Defendants assert they are entitled to qualified immunity.

## II. STANDARD OF REVIEW

In cases where a magistrate judge has submitted a report and recommendation, and a party has properly filed objections to it, the district court must conduct a *de novo* review of those parts of the report and recommendation to which the party objects.  28 U.S.C. § 636(b)(1)(C).  The district "court may accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge."  Id.

## III. ANALYSIS

### A. EIGHTH AMENDMENT CLAIM

The Eighth Amendment's prohibition on cruel and unusual punishment requires the government to provide inmates with medical care.  Estelle v. Gamble, 429 U.S. 97, 103 (1976).  It "forbids prison officials from 'unnecessarily and wantonly inflicting pain' on an inmate by acting with 'deliberate indifference' toward [his] serious medical needs." Jones v. Muskegon Cnty., 625 F.3d 935, 941 (6th Cir. 2010) (quoting Blackmore v. Kalamazoo Cnty., 390 F.3d 890, 895 (6th Cir. 2004)).  To succeed on his claim, Vandiver must satisfy two elements, an objective one and a subjective one.  Wilson v. Seiter, 501 U.S. 294, 300 (1991).

The objective element of a deliberate indifference claim is satisfied by a showing that the plaintiff had a serious medical need.  Id. at 297.  This prong is not in dispute.

The subjective element of a deliberate indifference claim requires a plaintiff to demonstrate that the defendant "subjectively perceived a risk of harm and then disregarded it."  Comstock v. McCrary, 273 F.3d 693, 703 (6th Cir. 2001).  A culpable

5

state of mind requires obduracy and wantonness, not mere inadvertence. Gibson v. Foltz, 923 F.2d 851, 853 (6th Cir. 1992). Accord Farmer v. Brennan, 511 U.S. 825, 835 (1994) (holding that official must know of and disregard an excessive risk to inmate health or safety)).

To succeed on this prong, Plaintiff must show that Gardon and Ives were personally involved in, or otherwise approved, or knowingly acquiesced in the unconstitutional conduct and that the acquiescence was a proximate cause of Plaintiff's harm. Siggers v. Campbell, 652 F.3d 681, 695 (6th Cir. 2011).

In her R&R, the Magistrate Judge concluded that, upon review of Plaintiff's medical record, affidavits, and deposition testimony, Plaintiff had not met this standard. A review of the records reveals that Plaintiff was on a 2400 calorie diabetic diet from June 2006. (Doc. No. 85, Ex. H). On December 18, 2006, Dr. Fatu wrote a diet order for a 2600 calorie mechanical soft diabetic diet, effective December 18, 2006, through June 18, 2007. (Doc. No. 80, Ex. A). Dr. Fatu also wrote medical detail orders for a shower chair, a wheelchair, prescription shoes, and a transport vehicle with a lift. (Doc. No. 80, Ex. B). On December 29, 2006, Dr. Fatu wrote a second order for a 2200 calorie diabetic diet with a snack. (Doc. No. 80, Ex. C). Vandiver stated that he had approached Dr. Fatu for a diet change in order to lose weight. (Doc. No. 88 at 5).

Gardon admitted that as the Health Unit Manager, she was responsible for implementing new diet orders. (Doc. No. 85, Ex. G). She testified at her deposition that her job was to ensure that the diet order was in compliance with the dietary regulations in place at the time. If the diet complied, Gardon approved it and forwarded it to a medical records clerk, who would type the diet detail and disseminate the information to

6

the dietitian, kitchen, and other areas. (Doc. No. 85, Ex. G). When Gardon was unavailable to implement an order, Ives assumed the responsibility.

According to Plaintiff, from November 2006 to January 2007, Gardon and Ives delayed implementation of his diet and he was "forced to eat from the regular food menu." (Doc. No. 85, Exs. A, C). Plaintiff's testimony as to whether he received a diet tray between December 18 and 29, 2006, is contradictory. (Compare Doc. No. 86, Ex. A at 74 and Doc. No. 85, Ex. C at 76-77).

After reviewing the evidence, the Magistrate Judge concluded that once a diet order was sent to the medical records clerk, or after it was disbursed to the kitchen or dietician, neither Gardon nor Ives "had the ability to interfere with a diet order." (Doc. No. 88 at 6). Plaintiff was receiving a 2400 diabetic diet on June 27, 2006. He received the diabetic mechanical soft diet from December 18 through December 29, 2006. Moreover, a handwritten notation reflects that J. Ives, not Connie Ives processed the new diet order. (Doc. No. 80 at Ex. D). Therefore, the Magistrate Judge found that Plaintiff had failed to show "triable issues of fact concerning whether Defendants violated his Eighth Amendment rights by withholding his special diet." (Doc. No. 88 at 6). Further, the Magistrate Judge concluded that "Plaintiff has not brought forward sufficient evidence to show that Defendants Gardon or Ives refused to dispense his hypertension medication [from December 2006 through March 2007], or refused to provide him with his other diabetes-related accommodations such as orthopedic shoes." (Id.) In addition, the Magistrate Judge found that "Plaintiff failed to demonstrate that Defendants were personally involved in a constitutional wrongdoing." (Id.)

The Court finds that the evidence advanced by Plaintiff is sufficient to demonstrate the existence of a genuine factual dispute as to whether his diet was implemented. The summary of Step II investigation acknowledges that Vandiver was on a special diet, "but there was no record" that the detail was processed or that the accommodation special notice was updated while Vandiver was housed at JCF. (Doc. No. 85, Ex. A 14). At his deposition, Dr. Jeffrey Stieve, MDOC's Chief Medical Officer, testified that he did not understand what the notation meant, and added, "I don't know whether we messed up or not with this particular order." (Doc. No. 85 at Ex. H). Lastly, Vandiver's expert noted that during this time period, "Vandiver's uncontrolled glucose levels, coupled with his mental illness, required intensive treatment and monitoring of his health condition." (Doc. No. 85 Ex. B.1 at 10). Thus, the delay may constitute an Eighth Amendment violation.

Likewise, it is undisputed that four medications for Vandiver were renewed on December 18, 2006. It is further undisputed that Plaintiff continued to complain about his failure to receive medication at JCF in March 2007, after he was transferred to a different prison. (Doc. No. 85, Ex. A, 10). Although the progress note from March 26, 2007, indicates that Plaintiff's "meds" were "good on serapis," the Court cannot conclude that the notation means he received his medication at JCF. Finally, the Court notes that Vandiver was measured for prescription shoes in early November 2006, and he did not receive the shoes until February 22, 2007. The Court has no basis for determining the basis for the delay.

8

### B. FIRST AMENDMENT RETALIATION

To succeed on his First Amendment retaliation claim, Vandiver must show the following: (1) he was engaged in constitutionally protected conduct; (2) he suffered adverse action which would deter a person of "ordinary firmness" from continuing to engage in such protected conduct; and (3) the adverse action was motivated at least in part by the plaintiff's protected conduct. See Thomas v. Eby, 481 F.3d 434, 440 (6th Cir. 2007) (quoting Thaddeus–X v. Blatter, 175 F.3d 378, 394 (6th Cir. 1999)).

Vandiver asserts that after he filed grievances, Ives and Gardon subjected him to worse treatment, including: cancelling the monthly health care forum meeting to address prisoners' healthcare needs; refusing to dispense medications and special diet; and delaying his orthopedic shoes. During that December to January time frame, Vandiver filed health care requests for renewal of medications and implementation of diet and special accommodation orders. On January 9, 2007, Vandiver filed a Step I grievance, notifying prison officials that he was being denied medical care because of his First Amendment activities. (Doc. No. 85, Ex. A at ¶ 21 and Ex. 12).

Plaintiff's January 9, 2007 grievance, JCF-07-01-00070-12e, alleges that JCF personnel, including members of the nursing staff denied him medical care and refused to renew orders from Plaintiff's physician. (Doc. No. 70, Ex. 6). According to Plaintiff, he submitted nine health care kites and received no responses, which he attributes to retaliation for raising issues about prisoners health care needs at the warden's forum. Plaintiff received no response to his Step I grievance. In his Step II appeal, Vandiver asserted that Defendants Beth Gardon and Ives denied him medical care. In response to Plaintiff's Step III appeal, the MDOC asserted that "grievant's health care requests

were received and processed." (Id.)

The Magistrate Judge concluded that Vandiver failed to provide sufficient evidence to demonstrate that Defendants were personally involved in the delay in his medical treatment and the decision to transfer Plaintiff to a different facility.  In addition, even if Gardon unilaterally cancelled a monthly healthcare forum in retaliation, the Magistrate Judge concluded, and this Court agrees, that the cancellation, in and of itself, does not constitute an adverse action that would deter a person of ordinary firmness from continuing to engage in protected First Amendment activities.

Nevertheless, Plaintiff does not rely solely on the cancellation.  He also relies on the threat to transfer him to another facility and the actual transfer.  Defendants argue that the transfer was initiated by another facility in order to accommodate a Level II medical wheelchair transfer.  The gist of Defendants' assertion goes to whether they are entitled to summary judgment because Plaintiff cannot establish the requisite causal connection. The initiation of the transfer is not dispositive, it is the selection of Vandiver to move to a different facility that must be considered.

There is no dispute that Gardon had the ability as HUM to transfer inmates. Moreover, prior to transfer, Vandiver had to be receive a medical clearance, and Gardon admitted that she was involved in evaluating medical clearances.  (Doc. No. 85, Ex. E at 48).  Likewise, Ives had the ability to initiate transfers of inmates.  Further, Defendants had knowledge of Plaintiff's protected activity.  Given the rarity of direct evidence of intent, the Court reviews whether circumstantial evidence supports Plaintiff's allegations.  Here, the temporal proximity between the events supports Plaintiff's claim.  Further, Defendants' authority combined with the fact that Plaintiff had

10

a serious medical issue–a foot infection--at the time he was selected for transfer creates an inference that the transfer may have been motivated in part by Vandiver's protected activities. In addition, the evidence shows that his transfer order did not reflect his special diet needs as required by MDOC policy; he was not placed in barrier free housing, and he did have a medical order for permanent placement at JCF.

In light of the Court's findings, Defendants' argument that they are entitled to qualified immunity because no constitutional violation occurred lacks merit. Therefore, the Court must consider whether Plaintiff exhausted his administrative remedies.

### C. EXHAUSTION

The MDOC provides prisoners with a procedure for seeking redress for alleged violations of policy and procedure or unsatisfactory conditions of confinement. The policy dictates that certain information must be included in the grievance. It instructs that "[t]he issues should be stated briefly and concisely. Information provided is to be limited to the facts involving the issue being grieved (i.e., who, what, when, where, why, how). Dates, times, places, and names of all those involved in the issue being grieved are to be included." MDOC Policy Directive 03.02.130 (Doc. No. 80, Ex. O.)

Plaintiff filed his Step I grievance regarding denial of medical care on January 9, 2007. He does not name either Gardon or Ives in the Step I grievance; he identifies Defendants in his Step II grievance, which he filed on February 11, 2007. Plaintiff was transferred two days after he filed his Step II grievance. In his Step II grievance, Vandiver alleges Gardon and Ives placed a retaliatory transfer on January 29, 2007. That transfer did not occur; therefore, his grievance addressed the cancelled transfer, not the actual February 13, 2007 transfer. Plaintiff never filed a grievance after his

February 13, 2007 transfer.

Defendants argue that Plaintiff's failure to identify Defendants at Step I of the grievance process and his failure to grieve the actual transfer constitute a failure to exhaust his administrative remedies. The Court disagrees.

Vandiver completed the three step grievance process. The JCF officials considered and adjudicated the grievance on the merits. Although Plaintiff did not mention Gardon or Ives in the Step I grievance, under Sixth Circuit authority, when prison official "opt to consider otherwise-defaulted claims on the merits," a prisoner is deemed to have properly exhausted his administrative remedies. Reed-Bey v., Pramstaller, 603 F.3d 322, 325 (6th Cir. 2010). A grievance serves as notice of a problem to prison officials, "not to provide personal notice to a particular official that he may be sued." Jones v. Bock, 549 U.S. 199, 219 (2007). Moreover, in LaFountain v. Martin, 334 F. App'x 738, 741 (6th Cir. June 3, 2009), the appellate court found the prisoner had exhausted his administrative remedies even though his grievance contained multiple issues that were related or one claim with multiple harms. Although MDOC policy prohibits grievances with "multiple unrelated issues," here, the claim of retaliation merely included multiple ongoing harms. Here, the Court finds the notice of Vandiver's problem sufficiently informed the prison officials.

## IV.  CONCLUSION

Accordingly, the Court **REJECTS** the Report and Recommendation, and **DENIES** Defendants' request for summary judgment.

**IT IS SO ORDERED.**

                                              s/Marianne O. Battani
                                              MARIANNE O. BATTANI
                                              UNITED STATES DISTRICT JUDGE

DATED: March 28, 2013

## CERTIFICATE OF SERVICE

Copies of this Order were served upon counsel of record on this date by ordinary mail and electronic filing.

                                              s/Bernadette M. Thebolt
                                              CASE MANAGER